Creedon, J.
In this Dist/Mun. Cts. RAD.A, Rule 8C, appeal, the defendant doing business under the name 99 Restaurant & Pub (hereinafter “the 99”) appeals from a judgment entered against it in a slip and M accident It is the 99’s position that the evidence does not warrant a finding of liability under the familiar principles expressed in Oliven v. Massachusetts Bay Transportation Authority, 363 Mass. 165 (1973). In context the judge found that an employee of the 99 spilled ice from an ice bin, located at the end of a bar that they used to prepare drinks, onto the floor; the employee failed to clean up the spill; the ice melted; and the plaintiff as she walked across the area in front of the ice bin slipped on water that once was an ice cube, and was injured.
We first address a procedural issue. The judge in this case issued a memorandum of his decision. In his memorandum the judge draws, as noted above, several inferences that he found supported liability. While the inferences are clearly articulated and it is to these inferences that the 99 takes issue in its appeal, the judge’s memorandum is not to be read as a decision constituting findings of fact as contemplated by Mass. R. Civ. E, Rule 52(c). See Stigum v. Skloff, 433 Mass 1011 (2001). The judge’s memorandum of decision “is merely an informal summary of his reasons.” Supra at 1011. The judge’s answers to the rulings of law requested state at questions 7-10 that he found the requested defendant’s employees to have spilled the ice.
In the early evening hours of October 22,1996, the plaintiff and her husband, having just completed some Christmas shopping, decided that it would be nice to go to the 99, located in Seekonk, MA for some appetizers and cocktails. When they arrived at the 99, the two entered and took seats at the bar. The bar was not crowded. While sitting at the bar, the plaintiffs husband made casual observations of the waitstaff using an ice bin to prepare drink glasses for the bartender. He observed that the staff used an ice scooper to retrieve ice, place the ice into the glasses and then deliver the glass to the bartender who would then make the drink. He did not observe the waitstaff spill any ice from the bin. Yet, in no sense was his attention completely focused upon tiie performance of work by employees of the 99 at the ice bin.
The ice bin, which is the focus from which the inferences of liability are drawn, itself was positioned so that its contents would be completely accessible to the waitstaff who would prepare their drinks while standing in front of the ice bin, which faced outward toward the area traveled by patrons of the 99. The position of the ice bin facing out instead of facing in towards the interior of the bar was, according to the manager of the 99, to facilitate the speed of service among the *158 seven or eight waitstaff. The ice bin was not designed with any shelving or other attachment that would catch spilled ice and allow the ice to fall back into the ice bin. An expert witness testified for plaintiff that rubber mats with holes to collect spillage would have been appropriate in this area. There were no rubber mats in front of the ice bin. According to the manager, the type of rubber mats suggested would hamper efficiency. That is, it is simply easier to clean up spillage than to wait until the spillage leaks out the sides of the mat At that point, there would then be a need to lift the mat and mop the entire area.
The plaintiff and her husband accomplished their intended goal and were preparing to leave one half hour to one hour after arrival. Before leaving, however, the plaintiff opted to make use of the ladies’ room before she departed. The plaintiff got out of her seat and walked toward the restroom location. As she crossed in front of the ice bin, she slipped and fell. Immediately she stood up and out of embarrassment proceeded to the ladies’ room.
The plaintiffs husband, having observed the fall, got out of his seat and went to the area of the fall. In front of the ice bin he observed a clear liquid that resembled water on the floor. He also made observations that this accumulation of water trailed away from the area right in front of the ice bin. The plaintiffs husband noticed, as he made his observations, that there was an area of water within this trail of water a “skid” mark which he thought was produced from someone skidding on the floor.[1]
Plaintiff injured her right hand and shoulder as a result of the fall. The trial judge awarded damages of $11,000.00.
While we are free to draw our own inferences from subsidiary findings, because the trial judge could observe witnesses giving testimony to spatial considerations, we decline to find the inferences unwarranted or erroneous that there was water right below the ice bin and that water trickled away across the travel path from the location. See n.l.
We do agree that the act of scooping ice from an ice bin with an instrument designed to do so and which is designed thereafter to be used to deposit its cache into a glass can produce an abundant cache of ice cubes, some which fall over the sides of the scooper itself. There need be no expert testimony to support this end result. We find no error in the trial judge’s finding that the ice cubes can fall from the ice scooper, miss the ice bin and fall upon the floor in front of the ice bin.[2] In fact, the 99’s manager’s testimony conceiting the rea *159 son why mats are not located in front of the ice bin supports the inference itself. That is, if the reason for the failure to place matting with holes to contain water spills is that there would be over the course of the night sufficient spillage such that there would eventually be leakage from the sides of the matting, the testimony then warrants the reasonable inference that it is not uncommon for there to be spillage of ice onto the floor by the waitstaff who use the ice bin.
We find that the judge was warranted in inferring that an employee of the 99 spilled ice from an ice bin, located at the end of a bar that they used to prepare drinks, onto the floor; the employee failed to clean up the spill; the ice melted; and the plaintiff as she walked across the area in front of the ice bin slipped on water that was once an ice cube.
Having found the inferences warranted, we now turn to the question of whether the 99 breached any duty of care owed to the plaintiff.
In order for an injured plaintiff to recover for slipping on a foreign substance on a defendant’s business premises, the plaintiff must prove either that (1) defendant caused the substance to be on the floor, (2) defendant had actual knowledge that the substance was on the floor, or (3) the substance was on the floor for such a length of time that the defendant should have known about it. See Oliveri, supra, 363 Mass, at 167.
In Beaulieu v. Stop & Shop Co., Inc., 1999 Mass. App. Div. 215, this court upheld, as warranted, the inference that water, which has seeped from the edge of a floor carpet located in front of a fish display case, had come from the fish case. There we said the “the presence of... water coming from the direction of the fish case cannot but compel the reasonable inference that this water had come from the fish case, and was, therefore, of the defendant’s own making.” Here too, on the record as presented, the inference is warranted that the water trail was caused by ice which had been dropped by the 99’s employees from the ice bin and had melted. As in Beaulieu, we find that there was no error in finding that the condition was created by the 99 and, therefore, under the first prong of Oliveri we affirm the trial judge’s finding of liability, and dismiss the appeal.
So ordered.

 We take this opportunity to point out that during the trial much of the testimony concerning the location of the ice bin and the water observed upon the floor following the plaintiffs fall was presented with the assistance of the use of a blackboard. Apparently a diagram was used and marked by witnesses to assist the trial judge in his understanding of the bar location, the ice bin, the water observed on the floor and the spatial relationship between the three. While not in evidence, the absence of a copy of that diagram in the record prevents us from considering any spatial inference drawn by the trial judge. Accordingly, we accept the trial judge’s inferential finding that there was water on the floor right below the ice bin and from this water a trail extended across the travel path toward a partition.
Where a chalk is used to orient testimony, a party, in order to provide a complete appellate record, may wish to photograph the chalk and have it marked as an exhibit See New England Mobile Fair, Inc. v. City of Boston, 2 Mass. App. Ct. 404, 414 and n.11 (1974).

 In the absence of the chalk, we cannot conclude that the judge was unwarranted in finding that because of its size, should the evidence warrant a finding that a waitperson could spill ice through the use of an ice scooper, an inference is reasonable that spillage would result in some ice missing the ice bin and instead drop to the floor directly in front of the ice bin.